Peter Garcia, Pro Se
clintonville@gmail.com
1969 S. Alafaya Trail #321
Orlando, FL  32828

THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PETER GARCIA,

      Petitioner,

      v.

COAST COMMUNITY HEALTH
CENTER

      Respondent

Case No. 6:20-cv-02175-MC

1) Age Discrimination in Employment, 29  U.S.C.§ 621 et seq; IRS 659A.030)

2) Americans with Disabilities Act, 42 U.S.C.§ 12101 et seq.

3) ORS 659A.030

4) Fraud

5) Retaliation

*Demand for Jury Trial*

NATURE OF THE ACTION

    This is an action under the Age Discrimination in Employment Act, 29 U.S.C.§ 621 *et. seq.*, as amended, ("ADEA"),  Oregon Law against discrimination in employment, ORS 659A.030 and  the Americans with Disabilities Act, 42 U.S.C.§12101, et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C.§1981a, to correct unlawful employment practices on the basis of age, to redress interference with rights protected under the

ADA and provide Dr. Peter Garcia appropriate relief who was adversely affected by such practices.

Petitioner, Peter Garcia, M.D., (Dr. Garcia) by way of this complaint alleges Respondent, Coast Community Health Center (Coast) discriminated against him based on his age and disability in failing to interview and or hire him when he applied for the Chief Medical Officer (CMO) position.  In August 2019 Dr. Garcia applied for the Chief Medical Officer position through a physician placement agency (Delta).  After his rejection Dr. Garcia in August 2019 he noted in that the position remained open in November 2019.  He sent a second application directly to Coast.  Coast acknowledged receipt of the second application. There was no further communication between the parties regarding the Medical Director position.

On April 26, 2020 Dr. Garcia applied for a second position with Coast, Chief Operations Officer (COO).  Dr. Garcia has advanced degrees in both business and law in addition to his medical degree. He has extensive work history in clinical and administration medicine and is well qualified for the COO position. After acknowledging his application on April 26, 2020 there was no further communication from Coast regarding this position.

JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.§12117(a), which incorporates by reference Sections 706(f)(1) and (3) and Section 707 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§§2000e-5(f)(1) and (3) and§2000e-6,

and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C.§1981a. This

Court has jurisdiction over the federal claims under 28 U.S.C.§1331. This Court has

jurisdiction over the state law claims pursuant to the doctrine of supplemental

jurisdiction, 28 U.S.C.§1367(a). This action is also authorized and instituted pursuant

to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29

U.S.C.§626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17

of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C.§§216(c)

and 217.

2. The employment practices alleged to be unlawful were committed in Brandon

Oregon which is within the jurisdiction of the United States District Court for the District

of Oregon.

PARTIES

3. Plaintiff, Dr. Peter Garcia (Dr. Garcia) is a resident of Orange County Florida.

4. Defendant, Coast Community Health Center is a Not for Profit Federally Qualified

Health Center (FQHC) located in Brandon, Oregon. They, as other FQHC

organizations, provide primary care outpatient medical services with an emphasis on

the poor and medically indigent.

5. At all relevant times, Defendant has continuously been an employer engaged in an

industry affecting commerce under Sections 101(3) and 101(7) of the ADA, 42 U.S.C.

§§12111(5), (7), within the meaning of Sections 11(b) and (h) of the ADEA, 29, U.S.C.§§

630(b), (g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of

the ADA.

7. At all relevant times, Defendant has continuously been doing business in the State of Oregon and has continuously had at least 20 employees.

ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Dr. Garcia filed two charges with the EEOC alleging violation of the ADEA, ADA and Retaliation by Defendant.

9. On October 29, 2020 the EEOC issued a Dismissal and Notice of Rights letter without finding the Defendant was in violation or in compliance with the statutes for which violations have been alleged with regards to the Chief Medical Officer Position. On November 24, 2020 the EEOC issued a Dismissal and Notice of Rights letter without finding the Defendant was in violation or in compliance with the statutes for which violations have been alleged with regards to the Chief Operations Officer.

10.   All conditions precedent to the institution of this lawsuit has been fulfilled.

STATEMENT OF CLAIMS

11. On August 6, 2019 Dr. Garcia received an email from a recruitment firm regarding a CMO position in Oregon.

12. The position required the successful applicant to perform administrative duties as well as provide clinical services to urgent care patients.

13. On August 15, 2019 Dr. Garcia responded to the recruitment firm (Delta) stating that his background in Emergency Medicine and medical administration would be a good fit for the position.

14.  A telephone interview was arranged and occurred on August 16, 2019 between Delta and Dr. Garcia.

15. The interviewer did not reveal that the Medical Director position was a Federally Qualified Health Center (FQHC).

16.  Dr. Garcia has been a Medical Director of a larger FQHC in Florida and is well acquainted with all aspects of these organizations management.

17. Dr. Garcia has extensive clinical experience in both a primary care setting and the Emergency Department reflecting the type of patients that are cared for by FQHC organizations.

17. On August 19, 2019, after consultation with Linda Maxon, Delta emailed Dr. Garcia stating that Coastal had decided to exclude him from further consideration as he had no "recent" experience with a Federally Qualified Health Center (FQHC).

18.  There was no requirement of any FQHC experience and certainly not recent in the job description created by Delta or Coastal. The individual selected for the position of CMO has never been part of an FQHC and no relevant administrate experience.

19.  In her statement to the EEOC Linda Maxon alleged that the patients of Coast represented "high acuity" patients, although no definition of high acuity was provided and no evidence to support this claim was produced.

20. Maxon went on to state Dr. Garcia, not withstanding his extensive Emergency Department experience, was not qualified to provide care for patients at Coast because of the "high acuity" nature of the patients.  Maxon failed to provide a modicum of credible evidence to support her statement.

21.  The rational for Dr. Garcia's rejection for the Medical Director position differ significantly between the recruiter (Delta) and Linda Maxon. This notable difference casts significant doubt on both explanations.

22. Dr. Garcia applied for a second position with Coast on April 26, 2020. This was performed though the application process supported by Coast's web site.

23. Dr. Garcia applied for the Chief Operations Officer position.  He is well qualified for the position from his work history in Medical Administration and his educational background with a Masters in Healthcare Management.

24. After the preliminary information was completed and submitted a request to complete the application was received by Dr. Garcia.  He completed the final part of the application on the same day.

25.  Coast acknowledged receiving his completed application on April 26, 2020. There are no indications that further actions were required on the part of Dr. Garcia.

26.  In the months following his application Coast did not contact Dr. Garcia in follow up of his application.  Dr. Garcia then filed his charge of discrimination with the EEOC.

27. On October 27, 2020 the attorney for Coast submitted a letter to the EEOC in rebuttal of his charges of discrimination and retaliation.

28.  Evidence to be presented at trial will demonstrate the rationales proffered by Coast are false, made knowing they are false and are pretext in an effort to avoid proper charges of discrimination and retaliation.

29.  The plaintiff can usually provide sufficient evidence of discriminatory intent by showing that the employer's proffered reason for the adverse action is false. *Reeves*

_v. Sanderson Plumbing Prods., Inc.,_ 530 U.S. 133, 141-149, 120 S.Ct. 2097, 2106-
2109, 147 L.Ed.2d 105 (2000)


FIRST CLAIM FOR RELIEF
(Age Discrimination in Employment Act, 29 U.S.C.§621 _et. seq_

For his for Claim for Relief, Dr. Peter Garcia Alleges:

30.  He incorporates paragraphs 1-29 as if fully set forth herein.

31.  The Age Discrimination in Employment Act (ADEA) was enacted in 1967.

32. In passing the ADEA, Congress explicitly found and declared that "the setting of

arbitrary age limits regardless of potential for job performance has become a

common practice, and certain otherwise desirable practices may work to the

disadvantage of older persons."

33. Evidence to be presented at trial will demonstrate that the requisites for a prima

facie case of age discrimination have been fulfilled.

> (1) The plaintiff was in the protected age group (over 40)
> (2) The plaintiff was otherwise qualified for the position.
> (3) The plaintiff was not hired.
> (4) The employer hired a younger person to fill the position **or**
> that the search remained open after the applicant was dismissed**.**

34.  The Chief Medical Officer and Chief Operations Officer positions at Coastal, for

which Dr. Garcia is well qualified, remained open and the search continued long

after Dr. Garcia was eliminated. Dr. Garcia is over 40 years of age.

35. Plaintiff need not show that age was defendants' sole or exclusive consideration

but must prove that age made a difference or was "a determinative factor" in the

employer's decision.  _Smithers v. Bailar,_ 629 F.2d 892, 897 (3d

Cir.1980); *accord Jorgensen v. Modern Woodmen of Am.,* 761 F.2d 502, 504 (8th Cir.1985); *Wing,* 426 N.W.2d at 178. The court in *Smithers* said that age was a "determining factor" if it played a part in the decision, even if nondiscriminatory reasons were more compelling. 629 F.2d at 897

36.  The clear intent of the ADEA was to assure the older worker that employment opportunities will be based on ability and experience rather than age.

37. Coast discriminated against Garcia because of his age in violation of 29 U.S.C. § 621 and 623.

38.  The unlawful employment practices complained of above were willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

39.  Any explanation provided by Coast is appropriately labeled pretext and given in an effort to justify a course of action that was discriminatory.

40.   The acts of defendant described above were willful, entitling Dr. Garcia to liquidated damages of twice his economic losses and interest, pursuant to 29 U.S.C. §626 and 216.

41.  As a further result of defendant's unlawful actions, Dr. Garcia is entitled to his reasonable attorney fees and costs pursuant to 29 U.S.C. §§626 and 216.

SECOND CLAIM FOR RELIEF
(Violation Oregon Statute 659A.030)

> It is declared to be the public policy of Oregon that available manpower should be utilized to the fullest extent possible. To this end the abilities of an individual, and not any arbitrary standards which discriminate against an individual solely because of his age, should be the measure of the individual's fitness and qualification
> for employment.

For his Second Claim for Relief, Dr. Peter Garcia alleges as follows:

42.  Dr. Garcia incorporates paragraphs 1-41 as if fully set forth herein.

43.  The Coastal Community Health Center discriminated against Dr. Garcia because of his age in violation of ORS 6594.030.

44.  The standards used by Coastal to eliminate Dr. Garcia from consideration were arbitrary based on age not experience.   They failed to measure or consider Dr. Garcia's true fitness for employment.

45. The damages suffered by Dr. Garcia are continuing as he pursues other work experiences.  Dr. Garcia is entitled to compensatory damages in an amount to be determined by the jury at the time of trial.

46. Defendant's actions were taken in bad faith, maliciously or with reckless indifference to Dr. Garcia's rights, entitling him to punitive damages in an amount to be determined by the jury at the time of trial.

### THIRD CLAIM FOR RELIEF
Fraud

For his Third Claim for Relief Peter Garcia alleges as follows:

47.  Sections 1-46 are incorporated by reference as if full set within.

> In order to establish actionable fraud, the plaintiff must plead and prove the following elements:
>
> "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Rice v. McAlister,* 268 Or. 125, 128, 519 P.2d

1263, 1265 (1974); _Conzelmann v. N.W.P. & D. Prod. Co.,_ 190 Or. 332, 225 P.2d 757 (1950).

48.  Coast made false representations to the EEOC regarding Dr. Garcia as it related to his applications for the Medical Director and Chief Operations Officer positions. Evidence to presented at trial will demonstrate the statements were made knowing the statements were false or made recklessly without any knowledge of the truth in an effort to have the EEOC act upon the statements.

49.  Defendant made the false statements with the intent that the EEOC would rely on these statements and discredit the charges of discrimination and retaliation filed by Garcia in an effort to exonerate itself.

50.  The EEOC depended upon and acted on the false statements made by Defendant in reaching its conclusions regarding discriminatory actions of Coast.

51.  Dr. Garcia was damaged from the false statements made by Coast to the EEOC.

FOURTH CLAIM FOR RELIEF

(Americans with Disabilities Act, 42 U.S.C.§12101 <em>et seq).</em>

 For his Third Claim for Relief Peter Garcia alleges as follows

52.  Sections 1-51 are incorporated by reference as if full set within.

53. The ADA prohibits discrimination by certain entities including private employers, against qualified individuals with a disability and in some cases, against persons perceived to be disabled.

54. The ADA makes it unlawful to "interfere with any individual in the exercise or enjoyment of … any right granted or protected by [the ADA].

> The ADA prohibits discrimination by certain entities including private employers, against qualified individuals with a disability and in some cases, against persons

perceived to be disabled. Specifically, it provides that no employer falling within the  scope of the ADA, "shall discriminate against a qualified individual with a disability because of the disability of such individual in regarding to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C.§ 121112(a) ; also see 42 U.S.C. § 12112(5)(defining employer)

55.  To establish a prima facie case for discrimination under the ADA, it is the plaintiff's

burden to show;

(1) He is a disabled person within the meaning of the Act;
(2) He is a qualified individual able to perform the essential functions of the job with or without reasonable accommodation;
(3) He suffered an adverse employment action based in whole or in part on his disability.

56. In order for Garcia to show he is a disabled person within the meaning of the Act, he

must show that he has "a physical or mental impairment that substantially limits one of

more major life activities." 42 U.S.C.§ 12102(2)(a), *Katz v. City Metal Co.,* 87 F.3d 26,

30-31 (1st Cir.1996), 29 CFR§ 1630.2(j)(1).

57. A major life activity is an activity this is "of critical importance to daily life." *Carroll v.*

*Xerox Corp.*, 294 F.3d 231, 238 (1st Cir.2002)

58. Examples of major life activities are" performing manual tasks, walking, seeing,

***hearing***, speaking, breathing, learning and working." 42 U.S.C.A.§ 12102(2)(B), 45

C.F.R.§ 84.3(j)(iii).

59. Dr. Garcia has a profound bilateral hearing loss and is the recipient of a cochlear

implant. His hearing loss is permanent and qualifies as a disability.  His use of cochlear

implant is noted on his CV.  The initial CV submitted to Coast did not note this. However

at the time of the final application, his CV had been updated and did note his use of a

cochlear implant.

60. Dr. Garcia is capable of performing the essential functions of the job with or without accommodations.

61. The circumstances under which the job applications occurred, which has been described in detail, suggests that Dr. Garcia was subjected to a negative job action based on disability.

62. The unlawful employment practices complained of were done with malice or with reckless indifference to the federally protected rights of Dr. Garcia.

FIFTH CLAIM FOR RELIEF
RETALIATION

For his Claim for Relief, Dr. Peter Garcia Alleges:

63.  Dr. Garcia incorporates paragraphs 1-62 as if full set forth herein.

64. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) if GINA and ORS 659.030(1)(f),it is unlawful for an employer to discriminate against any current employees, former employees or job applicants because they have opposed any practice made unlawful by the statues, or because they have made a charge, testified, assisted, filed a complaint or participated in any manner in an investigation, proceeding, or hearing under the laws.

65. Equal employment opportunity applies to all terms and conditions of employment, including *hiring*, placement, promotion, termination

66. For Dr. Garcia to establish a prima facie case of retaliation he must prove;

> 1) He was engaged in statutorily protected activity
> 2) He suffered adverse employment action,
>  3) A causal connection between the two.
> *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1390 (8th Cir.), *cert. denied,*  U.S., 109 S.Ct. 228, 102 L.Ed.2d 218 (1988).

In *McQuary v. Bel Air Convalescent Home, Inc.,* 69 Or.App. 107, 684 P.2d 21, *rev. den.,* 298 Or. 37, 688 P.2d 845 (1984), the Oregon Court of Appeal stated:

"Statutes which protect employees against retaliation do not require that the alleged violation which the employee claims be ultimately proved. *See, e.g.,* ORS 652.355 (protects an employee who merely consults an attorney or agency about a wage claim); ORS 654.062(5) (protects any employee who makes a complaint under the Oregon Safe Employment Act); ORS 659.030(1)(f) (prohibits discrimination against an employee who filed a civil rights complaint); ORS 663.120(3) (prohibits discharging or discriminating against an employee for filing an unfair labor practices complaint). We have, in fact, upheld awards for retaliation despite holding that the original complaint did not show discrimination. Similar considerations of public policy lead to our conclusion that an employee who reports a violation of a nursing home patient's statutory rights in good faith should be protected from discharge for that action."
*see also McPhail v. Milwaukie Lumber Co.,* 165 Or.App. 596, 606, 999 P.2d 1144 (2000)

67. Evidence to be presented at trial will demonstrate that Dr. Garcia has met all of the requirements of a prima facie case of retaliation. Actions were taken against him during his application for the Chief Operations Officer for filing a charge of discrimination for his rejection as a candidate for the Chief Medical Officer position.

In addition the evidence offered at trial will demonstrate that any defense presented by Coast is pretextual and in justification of a course of action that was discriminatory in nature.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Dr. Peter Garcia prays for judgment against defendants for the following relief:

1. For his lost wages and benefits, including future losses, in an amount to be determined by the jury at the time of trial, along with prejudgment interest thereon;

2. For liquidated damages in the amount equal to his economic losses to be determined by the jury at the time of trial, along with prejudgment interest

thereon; For non-economic damages in an amount to be determined by the jury at the time of trial;

3. For punitive damages in an amount to be determined by the jury at the time of trial;

4. For reasonable attorney fees and costs incurred herein; and

5.  For such other relief as the Court may deem just and proper.


Respectfully submitted this 15th day of December, 2020.

By: _____
       Peter Garcia, Pro Se
       1969 S. Alafaya Trail
       Suite 231
       Orlando, Florida  32828
       clintonville@gmail.com